SCOTT BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JOSEPH H. HUYNH, DC #495403**
Joseph.Huynh@usdoj.gov
Assistant United States Attorney
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:26-mj-00108-11** |
| **v.** | **UNITED STATES' MOTION FOR REVOCATION OF RELEASE ORDER** |
| **CHRISTOPHER REASOR,** | |
| **Defendant.** | |

Defendant is a long-time drug trafficker of fentanyl and other drugs as well as a habitual possessor of firearms to include assault rifles, silencers, and short barrel shotguns despite a criminal history that includes felonies for multiple burglaries, aggravated theft and theft, drug possession, assault, unlawful use of a weapon, and menacing. He has failed to appear multiple times in court, as recently as May 6, 2026, and absconded from state supervision until his arrest in this case. It has led to Coos County Probation Officer to opine that he would not support Defendant's release as the Defendant has a history of non-compliance with supervision and previously absconded from supervision approximately one year ago.

/ / /

For these reasons and for the others set forth in this motion, the Government believes the Defendant's presumption of detention based on the charges in this case is warranted and that he is a flight risk and danger to the community and that no combination or conditions, especially that based on compliance at a custodial treatment facility overcomes that. Thus, the Government seeks to revoke the release order issued by Judge Potter that is stayed pending the resolution of this appeal of her decision.

**PROCEDURAL BACKGROUND**

Defendant was arrested on May 6, 2026, in connection with an ongoing DEA investigation into a suspected Drug Trafficking Organization (DTO). A release hearing was held on June 9, 2026. The Government moved for detention based on risk of flight and danger to the community. While Judge Potter did not detain him based on a risk of flight, she did have concerns about his repeated access to firearms and ordered him detained.

On June 24, 2026, Defendant sought a second consideration of the order of detention. Through his Counsel's, proffer, he suggested some of the guns found in his possession belong to others but he took the blame anyway and claimed ownership and suggested he no longer sought release into the community but would agree to pretrial services' recommendation that he be released after an in-custody substance use evaluation and treatment bed is available. The Government continued to argue strenuously for detention based on risk of flight and danger to the community, noting the concerns of his own probation officer and the subsequent warrants sought based on his abscond from supervision. Judge Potter agreed to pretrial services' recommendation but stayed the matter to allow the Government to appeal her release decision noting that a bed would not be available for months but that he would be put on the waitlist in the meantime pending the Government's appeal.

## FACTUAL BACKGROUND[1]

**The Crime**

The facts underlying the conspiracy charge against Defendant are laid out in the complaint. In summary, the United States, including federal and local law enforcement agencies have been conducting a criminal investigation into a transnational drug trafficking organization (DTO) transporting narcotics including methamphetamine and fentanyl into California and Mexico before distributing it across the United States including the state of Oregon through postal services and vehicles. The investigation into the DTO, law enforcement seized approximately 56 pounds of fentanyl, 116 pounds of methamphetamine, more than $300,000 and 20 firearms from members of the DTO. The Government believes that Defendant is a local distributor for the organization.

**A. April 2025 Transfer of Drugs**

On April 28, 2025, law enforcement obtained information that Defendant was traveling to Eugene, Oregon, to purchase drugs. At approximately 5:00 p.m., law enforcement located Defendant's vehicle traveling through Eugene. He was observed exiting his vehicle and getting into the front passenger seat of a gray Toyota bearing California temporary permit DE03Z67. Defendant engaged in a hand-to-hand exchange while in the vehicle. He then exited the vehicle.

**B. June 2025 Seizure of Fentanyl**

On June 5, 2025, law enforcement observed Defendant make multiple trips from his vehicle to the Pilot Travel Center before finally getting back into his car, leaving the passenger

---

[1] Some discovery related to the facts indicated herein have been processed and is expected to be produced to defendant soon. Some additional discovery materials have been collected and will be produced after review and processing.

door slightly open. At approximately 8:53 p.m., a white Honda Civic bearing Oregon plate ZWT051 entered the parking lot and was parked three spots away from Defendant's vehicle. He then exited his vehicle and got into the passenger seat of the Honda. Defendant remained in the vehicle for approximately two minutes before returning to his own car. Law enforcement then conducted a traffic stop and deployed a drug-detecting canine, which alerted the presence of controlled substances. He admitted there was fentanyl in the vehicle and a fanny pack with a lock whose code Defendant provided to open it. Inside was 114.4 grams of fentanyl in a plastic baggie.

Additionally, law enforcement found a black backpack in the truck of the vehicle that had a spring assistance knife, and a black and blue colored Glock with an attached suppressor and a large 30 round magazine for it. The Glock was polymer model requiring assembly. Defendant told law enforcement he owed a dealer a few thousand dollars and bought the firearm from a named person in Coos Bay.

**<u>Other Offenses</u>**

Not mentioned in the complaint but proffered and discussed in connection with his detention hearing are additional facts into Defendant and his criminal activity conducted by ATF and Coos County Sheriff's Office.

<u>December 20, 2024, Seizure of 13 Firearm and Drugs from Defendant</u>

Law enforcement learned that Defendant was in possession of numerous firearms to include assault rifles and large quantity of drugs. On December 20, 2024, law enforcement conducted a search at a location where he was residing in Coos County. There, he hid in a makeshift shack in the back of the property. He was found behind a false wall with a few hundred rounds of stolen ammunition. Law enforcement also located in that room 13 firearms to

include handgun, an assault rifle, and long guns as well as 70 grams of suspected fentanyl, methamphetamine, cocaine, drug ledgers, stolen property and $692.

June 16, 2025

Subsequent to his June 9, 2025, stop, law enforcement conducted a search at his storage unit in the Depo Bay area. A search of that unit found 3 assault rifles and boxes of ammunition.

April 16, 2026, Search

On April 16, 2026, local authorities executed a search at his apartment in Florence, Oregon. There, they located a short barrel rifle and various gun parts on the bed.

May 6, 2026, Search

After Defendant was taken into custody based on the federal warrant, another search was conducted of his apartment by local law enforcement. There, law enforcement seized approximately 400 grams of fentanyl.

## APPLICABLE LAW

### A. Standard of Review

Review of a magistrate judge's release order is *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The court should "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. The ultimate determination of the propriety of detention should also be decided without deference to the magistrate's conclusion. *Id.*

### B. Standard and Burden

The government bears the burden of establishing that the defendant poses a danger to the community by clear and convincing evidence; however, risk of flight need only be proved by preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990);

*United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *Winsor*, 785 F.2d at 756. *See also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Subject to rebuttal by the defendant, in a case that involves a controlled substance offense for which a maximum term of imprisonment of ten years or more, it shall be presumed that *no* condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(2).

Though a rebuttable claim, the presumption of detention is "not erased when a defendant proffers evidence to rebut it; rather, it remains in the case as an evidentiary finding militating against release." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). "The mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society. *United States v. Hare*, 873 F .2d 796, 798-799 (5th Cir. 1989).

Should the defendant proffer evidence "to rebut the presumption of dangerousness, the court considers four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged (including whether it involves controlled substances or firearms; (2) the weight of the evidence; (3) the nature and seriousness of the

danger posed to the community; and (4) defendant's history and characteristics. 18 U.S.C. § 3142(g).

## DISCUSSION

Defendant poses a significant danger to the community and a serious risk of flight. He has proven this despite criminal convictions and despite being on state supervision for his fourth cycle starting in 2022. His obsession with dangerous weapons, ongoing drug distribution, and disregard for the law, supervision by probation officers, and orders of the Court. In this case, there is a presumption of detention, and it is warranted.

### *A. Defendant's History and Characteristics*

According to his state probation officer, Defendant is on his fourth cycle of probation, currently has warrants out of three separate counties, and has a significant criminal history. On numerous occasions, Defendant has been found to be in possession of drugs and dangerous weapons, two simultaneously as noted above.

### *B. The Danger Posed to the Community*

The nature of the offense encompasses a multi-state international drug trafficking operation. Defendant is a local distributor for them, trafficking in pounds of fentanyl and possession serious and significant weapons in doing so. And he did this while on state probation or after having absconded from state probation. He threatens the community with his drugs, with his weapons, some stolen, and with his compete disregard for orders and rules of the Court. The risk that continued narcotics trafficking creates while Defendant is on release status constitutes sufficient danger to the community. *United States v. Rueben*, 974 F .2d 580, 585 (5th Cir. 1992).

/ / /

He continued to carry firearms despite being a felon and despite having them removed from him multiple times. While law enforcement held off on his arrest in light of the larger international drug trafficking takedown, which occurred a few months ago, it continued to surveil him and remove firearms from him when appropriate pending his eventual arrest in this case.

His new claim, that the firearms he claimed were his, only further proves his disingenuous approach to the Court. He now claims that some of the firearms belong to his girlfriend despite the view that the nature of some of the weapons and the pieces found next to that required a sophistication and knowledge of the firearms his girlfriend did not have.

Furthermore, his continued drug use is a problem not only for himself but for the community. His probation officer has indicated that Defendant has been offered drug treatment multiple times in the past. While he has managed to complete drug treatment on two occasions, he has failed or been kicked out of the program on at least 4 other occasions.

In this case, he continued to use drugs including fentanyl daily for the last two years. While it is dangerous to him, the Government's concern is the danger he poses to others when he drives while intoxicated. On one occasion, on March 1, 2025, he was stopped in Douglas County by local law enforcement and found to be diving on a suspended license. However, he was so high on fentanyl that law enforcement had to put him in detox instead of a local jail. The risk he posed to others while driving while on drugs cannot be overstated.

***C. Risk of Flight***

In addition to his proclivity for guns and drugs, Defendant has a history of absconding from supervision, failing to appear in court, and violating conditions of probation. Defendant has a history of failing to appear in court. In fact, in 2013, it was a charge against him. He also failed to appear in court multiple times: on October 23, 2024, for which a warrant was issued; on

July 23, 2025, for which a warrant was issued; on June 18, 2025, for which a warrant was issued and, most recently on May 6, 2026, for which a warrant was issued.

He also has a failure to obey orders of the Court having violated terms of his probation in 2013, on June 21, 2016, and having probation revoked on December 19, 2016.

But most problematic, he has absconded from supervision for over a year. Previous abscondments are highly relevant in assessing risk of flight. *United States v. Anderson*, 177 F. Supp .3d 458, 466 (D.D.C. 2016). According to his Coos County probation officer, warrants were issued at least two times for his arrest. In some cases, he was arrested locally and told to report to probation but would not do so, traveled to another location, and another warrant would have to be issued. The warrant was in effect until his arrest in this case. Absconding from probation and leaving the jurisdiction in which he had been ordered to report to probation weighs heavily in finding "a serious risk that such person will flee." *United States v. Cook*, 87 F.4th 920, 925 (8th Cir. 2023).

Defendant's current charge carries a maximum sentence of life in prison with a mandatory minimum sentence of ten years and not less than five years of supervised release. If 924(c) charges apply, he is looking at an addition 5-year term of imprisonment. The time he faces is severe as is his motivation to flee. While Defendant has spent time being incarcerated, the current threat that disposition poses in this case is significant in relation to Defendant's longest prison sentence of eighteen months.

***D. Drug Treatment as an Alternative to Detention***

While Pretrial has proposed drug treatment as an alternative to detention and Defendant at the last hearing agreed to such condition, that alternative does not overcome the presumption of detention in this case and is not a viable alternative to ensure his appearance at future hearings

and ensure the safety of the public. The Government had not spoken to Defendant's Coos County Probation Officer prior to the last detention hearing and did not receive the pretrial service recommendation until soon before court. However, it has now spoken with him and confirmed that Defendant has a long history of failing to attend his court ordered sessions or refusing to attend them.

The probation officer has repeatedly given Defendant opportunities to address his addiction issues, including inpatient treatment. Defendant failed many of these opportunities. Four by this count. He also noted that just prior to Defendant absconding, he was told he need to find attend in-patient treatment. Defendant's response was to abscond.

Placing him in a nonsecure drug treatment facility does not address the issues behind his danger or his risk of flight. He is not an addict feeding his habit. He is a drug trafficker who surrounds himself with deadly guns regardless of the law and refuses to be supervised. Currently, Defendant has active warrants out of Lane, Douglas, and Coos counties.

It is evident that Defendant still does not want treatment as his initial request was to be released into the community. Now, he is agreeing to it, notably not asking for it, so he can avoid being in custody. It only allows him another opportunity to flee from supervision and be a danger to the community when he does so is not an appropriate alternative in the Government and his probation officer's opinion. The presumption of detention is not insufficiently unrebutted, but warranted and necessary in this case to ensure his appearance at future proceedings and protect the community.

/ / /

/ / /

/ / /

## CONCLUSION

Accordingly, the Government asks the Court to respectfully overturn the release order in this case and order Defendant detained as a danger to the community and a flight risk.

Dated June 30, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Joseph H. Huynh*
JOSEPH H. HUYNH
Assistant United States Attorney